**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JANE DOE,

Case No. _____

Plaintiff,

Hon. _____

v.

FRANK ALSAIGH a/k/a
"@CHALDEANFRANKIE";

HALEY ROBIN a/k/a                           **DEMAND FOR JURY TRIAL**
"@HALEYMARY22," a/k/a
"@JONATHANESHAYZAYA," a/k/a
"@CRASHOUTQUEEN0122" and a/k/a
"@ERAZORA222";

JOHN/JANE DOE 1 a/k/a
"@IMNOTINIT7";

and

JOHN/JANE DOE 2 a/k/a
"@SHIKHTANAMALOOMAT";

Defendants.

---

## COMPLAINT

NOW COMES Plaintiff Jane Doe ("Plaintiff"), by and through undersigned counsel, for her Complaint against Defendants Frank Alsaigh a/k/a "@CHALDEANFRANKIE" ("Alsaigh"), Haley Robin a/k/a "@HALEYMARY22," a/k/a "@JONATHANESHAYZAYA," a/k/a "@CRASHOUTQUEEN0122" and a/k/a "@ERAZORA222" ("Robin"), John/Jane Doe 1 a/k/a "@IMNOTINIT7" ("Host Doe"),

1

and John/Jane Doe 2 a/k/a "@SHIKHTANAMALOOMAT" ("Maloomat Doe"), alleges as follows:

## PRELIMINARY STATEMENT

1. This case arises from a deliberate, escalating campaign to weaponize Plaintiff's private intimate image, identity, family, reputation, and community relationships on TikTok. Plaintiff is informed and believes that Haley Robin used, controlled, operated, or coordinated through multiple TikTok accounts and display names, including @HALEYMARY22, @JONATHANESHAYZAYA, @CRASHOUTQUEEN0122, and @ERAZORA222. Plaintiff is further informed and believes that the @SHIKHTANAMALOOMAT was operated by a presently unknown person sued as Maloomat Doe. Plaintiff will subpoena TikTok for subscriber records, alias history, login records, device and IP information, Live metadata, direct-message records, username changes, and related records confirming the accounts, account operators, and coordinated users involved.

2. The campaign has now included multiple known uses, displays, transmissions, threatened transmissions, and solicitations involving Plaintiff's private intimate image. First, during a public June 2026 TikTok Live associated with the @SHIKHTANAMALOOMAT account and/or related accounts, Alsaigh displayed or caused the display of Plaintiff's private intimate image to a large TikTok audience. Second, Maloomat Doe, acting through the @SHIKHTANAMALOOMAT account or a substantially similar

2

account, sent Plaintiff direct messages attaching or showing the image, threatened to send it to Plaintiff's mother, sisters, and father, and sent Plaintiff pictures of her family as part of the threat. Third, on or about July 6, 2026, Robin, acting through the @JONATHANESHAYZAYA account or a substantially similar account, displayed or caused the display of Plaintiff's private intimate image. Fourth, on or about July 7, 2026, Robin went Live on her main @HALEYMARY22 account, where a viewer asked to "show the nudes," Robin responded in substance that the viewer should direct-message her afterward and she would send "everything," and another viewer stated that they had already seen Plaintiff's intimate pictures.

3. Plaintiff never consented to any public disclosure, direct-message transmission to third parties, threatened family distribution, Live-stream display, replay, screenshot, repost, or other use of the image. The image was private, was not public, was not commercial pornography, was not newsworthy, and was used for humiliation, coercion, intimidation, retaliation, and reputational harm.

4. After the first Live display, the misconduct escalated through TikTok Lives, account-switching, direct messages, threats, public statements, and offers to transmit Plaintiff's private images by direct message. On or about July 1, 2026, Robin went Live by herself under the @CRASHOUTQUEEN0122 name and continued speaking about Plaintiff, Plaintiff's private pictures, Plaintiff's reputation, and related accusations. Plaintiff pleads the July 1 Live as part of

the continuing slander, harassment, intimidation, and reputational attack, and as context showing motive, coercion, intimidation, and reckless disregard of Plaintiff's non-consent and emotional harm.

5. TikTok is not a defendant. TikTok is a third-party platform and records custodian. Plaintiff seeks relief against the individuals and Doe Defendants who displayed, distributed, threatened, assisted, amplified, reposted, or coordinated the unlawful publication and harassment campaign.

**PARTIES**

6. Plaintiff Jane Doe is an adult individual and a Michigan resident whose family, business, customers, professional reputation, and community relationships are located in Michigan. Plaintiff proceeds under a pseudonym to prevent this public filing from compounding the very injury Defendants inflicted.

7. Plaintiff owns or operates a Michigan business. To protect Plaintiff's identity in this public pleading, the business is referred to as "Plaintiff's Business" unless and until the Court authorizes sealed or redacted treatment of identifying details.

8. Defendant Frank Alsaigh a/k/a "@CHALDEANFRANKIE" is an individual who, upon information and belief, resides in California and uses or used the TikTok handle @chaldeanfrankie and/or substantially similar accounts. Plaintiff identifies Alsaigh as the person who displayed or caused the display of Plaintiff's private intimate image during the June 2026 TikTok Live.

4

9. Defendant Haley Robin a/k/a "@HALEYMARY22," a/k/a "@JONATHANESHAYZAYA," a/k/a "CRASHOUTQUEEN0122," and a/k/a "@ERAZORA222" is an individual who, upon information and belief, resides in Michigan. Plaintiff is informed and believes that Robin operated, controlled, used, or coordinated through those accounts and aliases to host or participate in TikTok Lives, conceal or obscure her identity, evade account-based accountability, tag or summon other accounts, make or amplify defamatory statements, threaten or offer to distribute Plaintiff's private intimate image, and display or cause the display of Plaintiff's private intimate image.

10. Defendant John/Jane Doe 2 a/k/a "@SHIKHTANAMALOOMAT" is an individual whose true name, residence, and full identifying information will be confirmed through TikTok records and discovery. Plaintiff is informed and believes that Maloomat Doe operated, controlled, used, or coordinated through the @SHIKHTANAMALOOMAT account or a substantially similar account to send Plaintiff direct messages containing or referencing Plaintiff's private intimate image, threaten to send the image to Plaintiff's family members, send pictures of Plaintiff's family as part of the threat, and otherwise participate in the same unlawful campaign.

11. Defendant John/Jane Doe 1 a/k/a "@IMNOTINIT7" is the host and/or operator of the TikTok Live account that hosted the June 2026 multi-person Live during which Plaintiff's private intimate image was displayed. Host Doe

is sued to the extent discovery confirms that Host Doe knowingly hosted, enabled, amplified, enlarged, invited, or materially assisted the public display and subsequent harassment after knowing the content involved Plaintiff's private intimate image.

12. At relevant times, each Defendant acted personally and/or as an agent, co-conspirator, aider, abettor, joint tortfeasor, or person acting in active concert or participation with one or more other Defendants. Plaintiff will amend this Complaint to substitute true names for Doe Defendants when they are learned through subpoena, platform records, and discovery.

## JURISDICTION AND VENUE

13. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim under 15 U.S.C. § 6851, a federal civil cause of action relating to disclosure of intimate images.

14. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts: Defendants' use of TikTok and related electronic communications to disclose, threaten, discuss, amplify, and weaponize Plaintiff's private intimate image, identity, family, reputation, and business relationships.

15. Personal jurisdiction exists in Michigan because Defendants intentionally targeted Plaintiff, her family, her Michigan business, her Michigan customer relationships, and her Michigan-centered reputation through internet

publications, direct messages, and coordinated TikTok activity. Defendants' posts and messages were not random national commentary; they were directed at Plaintiff, her family, her business relationships, and the foreseeable and intended harm in Michigan.

16. Alsaigh is reported to have acted from California, but he used TikTok - an interstate internet platform - to publish or cause the publication of Plaintiff's private intimate image into Michigan and to a community that Defendants understood would identify Plaintiff, discuss her, contact her, and harm her personal and professional reputation.

17. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the injury to Plaintiff's privacy, reputation, family relationships, emotional well-being, and Michigan business relationships.

**PSEUDONYMITY, CONFIDENTIALITY, AND NON-REPRODUCTION OF THE IMAGE**

18. Plaintiff brings this action as Jane Doe because public filing under her true name would cause the same harm the lawsuit seeks to stop. Section 6851 expressly permits injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym. 15 U.S.C. § 6851(b)(3)(B). California Civil Code § 1708.85 likewise authorizes pseudonymous proceedings and redaction of identifying characteristics for claims brought under that section.

19. Courts applying § 6851 have permitted pseudonymous filing and protective orders in NCII cases because anonymity is necessary to prevent the litigation

7

from becoming a second publication of the intimate images. See *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, Order (D. Ariz. Feb. 7, 2024).

20. Plaintiff does not attach, reproduce, quote, or describe the intimate image in unnecessary detail in this public Complaint. The image, any screenshots that reveal Plaintiff's body or identity, and any unredacted identifying information should be filed only under seal or pursuant to a protective order.

## FACTUAL ALLEGATIONS

### A. Plaintiff's private image and Defendants' knowledge of non-consent

21. Plaintiff is an adult woman. At all relevant times, Plaintiff was over the age of eighteen.

22. Before the events alleged herein, Plaintiff created and/or possessed private intimate images intended only for private, limited, non-public use. Plaintiff did not create those images for public distribution, commercial pornography, public display, TikTok publication, or dissemination to family, customers, community members, or strangers.

23. Plaintiff's private intimate image displayed during the TikTok Lives, used in Maloomat Doe's direct messages, and discussed or offered for further direct-message distribution during Robin's later Lives depicts Plaintiff and exposes intimate body parts within the meaning of 15 U.S.C. § 6851 and/or California Civil Code § 1708.85. Plaintiff was identifiable from the image itself, from the Live context, from the surrounding words and account

8

activity, and/or from information displayed and said in connection with the image.

24. The image was plainly private. No reasonable person viewing the image could believe that Plaintiff had authorized its broadcast on a public TikTok Live, its distribution by direct message to third parties, or its threatened distribution to family members.

25. Plaintiff did not consent to any Defendant obtaining, possessing, publishing, displaying, sending, threatening to send, reposting, or otherwise making the image accessible. Plaintiff's private communication of any image to any one person, if it occurred, was not consent for Alsaigh, Robin, Host Doe, Maloomat Doe, or any other Doe Defendant to publish or disclose it to others.

26. Defendants knew Plaintiff did not consent, or at minimum recklessly disregarded her lack of consent. Their own words and conduct show that the image was used as leverage, humiliation, punishment, retaliation, and coercion, not as speech on a matter of legitimate public concern.

**B. The June 17, 2026 TikTok Live and Alsaigh's display of Plaintiff's private image**

27. Beginning on or about June 17, 2026, Defendants and related accounts began discussing, targeting, and threatening Plaintiff during TikTok Lives and related TikTok activity.

28. During a June 17, 2026 TikTok Live hosted or facilitated by @IMNOTINIT7 or a substantially similar account, multiple TikTok accounts appeared on the panel or in the Live environment, including @CHALDEANFRANKIE,

9

@HALEYMARY22, @nickneech313, @SHIKHTANAMALOOMAT, @bdx_1013, @rvma.epoxy.floori, @loras1028, and @thilaja1, among others.

29. During the June 2026 TikTok Live, Alsaigh, using or appearing as "@CHALDEANFRANKIE," displayed or caused the display of Plaintiff's private intimate image in the Live panel. TikTok metadata will establish the exact number of live viewers, replay viewers, clips, comments, shares, account participants, host controls, panel controls, and accounts involved.

30. Plaintiff identifies Alsaigh as the person who displayed or caused the display of the image. To the extent TikTok interface labels, panel controls, screen-sharing metadata, host controls, or account records show additional individuals assisted, invited, enlarged, pinned, or enabled the display, those individuals are sued as Doe Defendants and will be identified through discovery.

31. The Live was not an accidental private exchange. It was a public, multi-person broadcast. The image was made accessible to a broad TikTok audience, including viewers who could record, screenshot, comment on, repost, discuss, or further disseminate the image and Plaintiff's identity.

32. During the Live and surrounding discussion, participants repeatedly identified or discussed Plaintiff by name and discussed her purported messages, personal life, and pictures. TikTok metadata and preserved evidence will establish the precise words spoken and the identities of speakers.

10

33. At least one participant encouraged making Frankie visible or larger on screen around the relevant discussion. Discovery will establish which participant made that statement, who controlled the panel, and whether Host Doe or other participants enlarged, pinned, spotlighted, or failed to remove Alsaigh after recognizing the content as private intimate imagery.

## C. Robin's July 1, 2026 @CRASHOUTQUEEN0122 Live and continuing slander campaign

34. On or about July 1, 2026, Robin went Live on TikTok by herself under the @CRASHOUTQUEEN0122 name or a substantially similar account name.

35. The July 1 Live showed a continued campaign of humiliation, reputational attack, intimidation, and coercion. During that Live, Robin continued to refer to and discuss Plaintiff, Plaintiff's private pictures, Plaintiff's reputation, and alleged personal conduct.

36. The July 1 Live confirms that the June NCII display was not an isolated accident. It was part of a sustained campaign to intimidate Plaintiff, threaten additional disclosure, shame her in front of her family and community, and interfere with her relationships and reputation.

37. During the July 1 Live and related TikTok activity, Robin made, adopted, amplified, and/or republished false statements of fact or defamatory implications concerning Plaintiff, including that Plaintiff sent sexual pictures or sexual propositions to multiple men and engaged in sexually improper or dishonest conduct. Plaintiff alleges those statements are false and

11

defamatory to the extent they assert facts about Plaintiff rather than opinion or insult.

**D. Maloomat Doe's direct threats through @SHIKHTANAMALOOMAT, further distribution, and account-switching**

38. On or about July 3, 2026, Maloomat Doe, using or acting through the @SHIKHTANAMALOOMAT account or a substantially similar account, posted TikTok content targeting Plaintiff and tagged numerous accounts, including Alsaigh's @chaldeanfrankie account and other accounts involved in the broader TikTok community. The post used humiliating imagery, audio, and tagging to continue the harassment campaign.

39. On or about July 5, 2026, Maloomat Doe, using or acting through the @SHIKHTANAMALOOMAT account sent Plaintiff a TikTok direct message containing or attaching Plaintiff's private image and threatened: "Keep it up [Plaintiff], your mom sisters and dad will get this picture to see what kind of naughty girl you are."

40. Shortly thereafter, Maloomat Doe, using or acting through the same account, sent a photograph of Plaintiff's family and messages stating, among other things, "I don't even know who this," "Fucking [clown emoji]," and "I got more so let's keep playing. The more you play the more [third party] is going to be upset so pick your poison."

41. Plaintiff is informed and believes that Maloomat Doe, Robin, and/or persons acting in concert with them have also transmitted Plaintiff's pictures by

direct message to third parties or offered to do so. Plaintiff will seek TikTok records, recipient testimony, screenshots, and forensic evidence to identify each recipient, each transmission, each solicitation, and each account or device used.

42. Defendants used, and continue to use, multiple accounts, substitute accounts, burner accounts, tagged accounts, display-name changes, and account-switching to distribute, threaten, and amplify the campaign. Plaintiff is informed and believes that Robin used multiple aliases, including @HALEYMARY22, @JONATHANESHAYZAYA, @CRASHOUTQUEEN0122, and @ERAZORA222, to conceal or obscure her identity, make the campaign harder to trace, and evade accountability. Those practices are relevant to identity, intent, concerted action, stalking, damages, injunctive relief, and preservation of platform records.

## E. Robin's July 6, 2026 Live through the @JONATHANESHAYZAYA alias

43. On or about July 6, 2026, Robin, using or acting through the @JONATHANESHAYZAYA account or a substantially similar account, went Live on TikTok.

44. During that Live, Plaintiff's private, intimate image was displayed.

45. The July 6 display is a second known public Live display of the image and another known incident involving the image after the June Live and Maloomat Doe's @SHIKHTANAMALOOMAT direct-message threat.

46. Upon Plaintiff's information and belief, Robin displayed, caused the display of, or knowingly permitted the display of the private image as part of the same campaign. TikTok metadata, device information, account-creation records, username changes, panel controls, Live-room records, and IP/login data will establish the identity of the operator and all participants.

**F. Robin's additional Live through the @ERAZORA222 alias**

47. On a date presently unknown, Robin, using or acting through the @ERAZORA222 account or a substantially similar account, participated in or conducted another TikTok Live concerning Plaintiff.

48. Plaintiff is informed and believes that @ERAZORA222 is another alternative account or alias of Robin. The @ERAZORA222 Live is part of the same campaign and further supports that Robin used multiple accounts to distance herself from the conduct, conceal or obscure her identity, evade account-based restrictions or detection, and continue targeting Plaintiff through accounts other than @HALEYMARY22.

49. TikTok metadata, device information, account-creation records, username-change history, Live-room records, panel controls, chat logs, and IP/login data will establish the date of the @ERAZORA222 Live, the operator of the account, the statements made, and all participants involved.

**G. Robin's July 7, 2026 @HALEYMARY22 Live and evidence of further distribution**

14

50. On or about July 7, 2026, Robin went Live again on her main TikTok account, @HALEYMARY22, and continued the slander, harassment, intimidation, and reputational campaign against Plaintiff.

51. During the July 7 Live, a viewer using the handle @moefromthed313 stated in substance, "show the nudes." Robin responded in substance that the viewer should direct-message her after the Live and that Robin would send the viewer "everything." That exchange supports the inference that Robin had access to Plaintiff's private intimate images, intended to transmit them by direct message, and was soliciting or inviting further third-party dissemination.

52. During the same July 7 Live, a TikTok user using the display name or handle @That'swhatSHEsaid stated in the public chat, in substance, that they had seen Plaintiff's pictures with her "boobs out" and wearing a thong, and separately stated that Plaintiff's "boobs were out," that it was "like nudity," and that the pictures were "naughty pics." Those statements show that third parties had already seen or claimed to have seen Plaintiff's private intimate images and that the images were being discussed and amplified in the same Live audience.

53. The July 7 Live was not isolated commentary. It was a continuation of the same campaign of harassment, defamation, intimidation, threatened distribution, and reputational harm. TikTok metadata, chat logs, replay

15

records, viewer records, direct-message records, and preserved recordings will confirm the precise statements, viewers, recipients, and account activity.

## H. Harm to Plaintiff

54. Defendants' conduct has caused Plaintiff severe emotional distress, humiliation, anxiety, fear, loss of sleep, reputational injury, fear of further publication, fear of family exposure, disruption to her relationships and business, and damages to be proven at trial.

55. Plaintiff has been forced to preserve evidence, consult counsel, seek platform preservation and removal, consider law-enforcement options, protect her family and business reputation, and prepare for the possibility that private images may be further disseminated by Defendants or those acting with them.

56. The harm is ongoing. Maloomat Doe's @SHIKHTANAMALOOMAT messages threaten future family distribution. The July 6 Live demonstrates continued access to and willingness to publicly display the image. Robin's July 7 @HALEYMARY22 Live, including the exchange with @moefromthed313 and the public comments by @thatswhatSHEsaid, demonstrates continued discussion, threatened direct-message distribution, and evidence that third parties had already seen or claimed to have seen Plaintiff's private images. Defendants' use of multiple accounts and the public nature of TikTok increase the risk of continued disclosure, reposting, impersonation, and further harassment.

16

## RELEVANT LEGAL CONTEXT

57. Section 6851 creates a federal civil cause of action where an intimate visual depiction is disclosed, in or affecting interstate commerce or using a facility of interstate commerce, without the depicted individual's consent, and the defendant knew or recklessly disregarded whether the individual did not consent. The statute defines "disclose" to mean transfer, publish, distribute, or make accessible, and permits actual damages or $150,000 liquidated damages, fees, costs, and equitable relief. 15 U.S.C. § 6851(a)(4), (b)(1), (b)(3). Consent to create an image, or consent to disclose an image to one person, does not establish consent for a defendant to distribute or publish it. 15 U.S.C. § 6851(b)(2)(C).

58. Federal courts applying § 6851 have allowed claims and emergency relief where intimate visual depictions were distributed online without consent. In *Doe v. McCollum*, No. CV-25-01774-PHX-MTL, Order (D. Ariz. Sept. 10, 2025), the court denied dismissal of a § 6851 claim where the plaintiff alleged the defendant recorded sexual acts, transmitted copies to others without permission, and threatened to ruin her reputation. In *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, Order (D. Ariz. Feb. 7, 2024), the court found likely success under § 6851 and entered a TRO where the defendant allegedly used the internet to disclose intimate visual depictions without consent and further disclosure threatened irreparable harm.

17

59. Michigan law recognizes public disclosure of private facts where there is intentional disclosure of information that is highly offensive to a reasonable person and of no legitimate public concern. *Doe v. Henry Ford Health Sys.,* 308 Mich. App. 592, 598-600, 865 N.W.2d 915 (2014); *Doe v. Mills,* 212 Mich. App. 73, 80, 536 N.W.2d 824 (1995). Michigan's publicity requirement is satisfied by communication to the public at large or to so many persons that the matter is substantially certain to become public knowledge. *Doe v. Henry Ford Health Sys.,* 308 Mich. App. at 598-599.

60. California law likewise recognizes public disclosure of private facts where there is public disclosure of a private fact that would be offensive and objectionable to a reasonable person and is not of legitimate public concern. *Shulman v. Group W Prods., Inc.,* 18 Cal. 4th 200, 214-216, 955 P.2d 469 (1998). A private, intimate image of a nonpublic person bears no legitimate public concern merely because Defendants used TikTok drama as the vehicle for disclosure.

61. Michigan courts apply intentional infliction of emotional distress to conduct that is extreme and outrageous, intended to cause or recklessly disregarding the probability of causing emotional distress, actually and proximately causes distress, and results in severe emotional distress. *Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 602-603, 374 N.W.2d 905 (1985); *Lewis v. LeGrow,* 258 Mich. App. 175, 196-197, 670 N.W.2d 675 (2003). Publicly displaying and

18

repeatedly threatening to distribute a private intimate image is at least as outrageous as the intimate privacy invasion recognized in *Lewis*.

62. California intentional infliction of emotional distress requires extreme and outrageous conduct, intent to cause or reckless disregard of the probability of causing emotional distress, severe or extreme emotional distress, and causation. *Hughes v. Pair,* 46 Cal. 4th 1035, 1050-1051, 209 P.3d 963 (2009). Plaintiff pleads it in the alternative against California-governed Defendants because the conduct alleged here is repeated nonconsensual sexual-image publication and threats, not mere insult.

63. Michigan civil stalking law permits a victim to sue an individual who engages in conduct prohibited by MCL 750.411h or 750.411i, and to seek damages, exemplary damages, costs, and reasonable attorney fees. MCL 600.2954. MCL 750.411h covers a willful course of conduct involving repeated or continuing harassment and unconsented contact, including electronic communications, that would cause and does cause emotional distress and feelings of being terrorized, frightened, intimidated, threatened, harassed, or molested. Conduct serving a legitimate purpose is excluded, but targeted threats involving private intimate images and unconsented electronic communications serve no legitimate purpose.

64. Michigan defamation law requires a false and defamatory statement concerning the plaintiff, unprivileged publication to a third party, fault at least amounting to negligence, and either special harm or actionability

irrespective of special harm. *Smith v. Anonymous Joint Enter.*, 487 Mich. 102, 113, 793 N.W.2d 533 (2010). Under MCL 600.2911, words imputing lack of chastity are actionable in themselves in the same manner as words imputing criminal conduct. See also *Lakin v. Rund*, 318 Mich. App. 127, 134-139, 896 N.W.2d 76 (2016).

65. Michigan civil conspiracy and concert-of-action liability are derivative and require an actionable underlying tort. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 257 Mich. App. 365, 384, 670 N.W.2d 569 (2003). Plaintiff pleads these theories only against Defendants whose coordinated conduct supports active participation in the underlying NCII, privacy, emotional-distress, stalking, and defamation claims.

### COUNT I - VIOLATION OF 15 U.S.C. § 6851

### (Against Alsaigh, Robin, Maloomat Doe, Host Doe, and Doe Defendants to the Extent Supported by Discovery)

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Plaintiff is a depicted individual within the meaning of 15 U.S.C. § 6851 because her body appears in whole or part in an intimate visual depiction and she is identifiable from the depiction itself, her likeness, distinguishing features, and/or information displayed or said in connection with the depiction.

68. The image displayed by Alsaigh, used and threatened by Maloomat Doe through the @SHIKHTANAMALOOMAT account, displayed again by Robin

20

through her @JONATHANESHAYZAYA alias, and discussed or offered for further direct-message distribution during Robin's July 7 @HALEYMARY22 Live is an intimate visual depiction within the meaning of § 6851 because it depicts Plaintiff's intimate body parts and/or sexually explicit content as defined by the statute.

69. Defendants disclosed and/or threatened to disclose the image within the meaning of § 6851 by transferring, publishing, distributing, making accessible, displaying, screen-sharing, sending to third parties, offering to send to third parties, and/or causing it to be made accessible on TikTok Live and through TikTok direct messages or related electronic communications. The June 2026 and July 6, 2026 public Live displays independently constitute disclosures by making the image accessible to Live audiences. The July 7, 2026 @HALEYMARY22 Live further supports that Robin had access to the images and was willing to distribute them by direct message to third parties.

70. The disclosures were made in or affecting interstate commerce and/or using a means or facility of interstate commerce, including TikTok, mobile devices, wireless networks, internet infrastructure, and electronic communications crossing state lines.

71. Plaintiff did not consent to the disclosures or threatened disclosures. Defendants knew, or recklessly disregarded whether, Plaintiff did not consent. Their knowledge is shown by the private nature of the image, the

21

public humiliation context, the threats to send the image to family, the "pick your poison" message, the July 7 invitation to direct-message for the images, the viewer admissions that the images had already been seen, the apology/"mercy" language, the repeated account-switching, and the use of the image to coerce and harm Plaintiff.

72. No statutory exception applies. The image was not commercial pornography, not a matter of public concern, not disclosed for law enforcement, medical, legal, or protective purposes, and not disclosed to assist Plaintiff.

73. As a direct and proximate result of Defendants' violations, Plaintiff has suffered actual damages, emotional distress, reputational harm, business harm, costs, and other damages. Plaintiff is entitled to actual damages or liquidated damages in the amount of $150,000, costs, reasonable attorney fees, other litigation costs, and equitable relief under 15 U.S.C. § 6851(b)(3).

## COUNT II - VIOLATION OF CALIFORNIA CIVIL CODE § 1708.85
### (Against California-governed Defendants)

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. This count is pleaded to the extent California law applies because Alsaigh is reported to have published from California and/or because relevant Defendants acted from California, used California-based devices, or are domiciled in California.

76. Defendants intentionally distributed, by means of TikTok Live, TikTok direct message to third parties, repost, or other electronic means, a photograph,

video, recording, screenshot, or reproduction of Plaintiff without Plaintiff's consent.

77. Defendants knew or reasonably should have known Plaintiff had a reasonable expectation that the material would remain private. The material was not created for public use, not posted publicly by Plaintiff, and not authorized for distribution.

78. The distributed material exposed Plaintiff's intimate body part(s) and/or showed Plaintiff in sexually explicit private circumstances within the meaning of California Civil Code § 1708.85.

79. Plaintiff has suffered general and special damages, including emotional distress, humiliation, reputational harm, business harm, and costs incurred to stop further distribution.

80. None of the statutory exceptions applies. Plaintiff did not create the material for public use, did not authorize posting on an internet platform, did not waive her privacy expectation, and the material was not of public concern.

81. Plaintiff is entitled to damages, equitable relief, confidentiality/pseudonym protections, reasonable attorney fees and costs, and all other relief available under California Civil Code § 1708.85.

## COUNT III - PUBLIC DISCLOSURE OF PRIVATE FACTS / INVASION OF PRIVACY UNDER MICHIGAN LAW

**(Against Alsaigh, Robin, Maloomat Doe, Host Doe, and Doe Defendants to the Extent Supported by Discovery)**

82. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

83. Plaintiff's private intimate image and related intimate details were private facts. They concerned Plaintiff's body, sexuality, and private life, not public affairs or any matter of legitimate public concern.

84. Defendants intentionally disclosed those private facts by broadcasting, displaying, making accessible, sending to third parties, reposting, and/or otherwise distributing the image and related private information on TikTok and through direct messages.

85. The disclosure was public. The June 2026 Live made the image accessible to a large TikTok audience. The July 6, 2026 Live made the image accessible to another TikTok Live audience. Plaintiff is informed and believes that Maloomat Doe, Robin, and/or persons acting in concert with them also sent, attempted to send, or offered to send the image to third parties by direct message. The July 7, 2026 @HALEYMARY22 Live further showed public discussion of the images, a request to "show the nudes," Robin's response that she would send "everything" by direct message, and viewer statements claiming to have already seen the images.

86. The disclosure would be highly offensive to a reasonable person. Publicly exposing a private intimate image in a TikTok Live, repeating the display on a later Live, threatening to send it to family members, sending family photographs as part of the threat, offering to send the images to third parties,

and allowing or encouraging the images to be publicly discussed as "nudes" or "naughty pics" is an egregious invasion of privacy.

87. Defendants' disclosures were intentional, malicious, reckless, and without privilege or legitimate purpose. They were not negligent web exposure. They were deliberate public displays and threats.

88. As a direct and proximate result, Plaintiff suffered severe emotional distress, humiliation, anxiety, fear of continued disclosure, reputational harm, business harm, and other damages.

## COUNT IV - PUBLIC DISCLOSURE OF PRIVATE FACTS / INVASION OF PRIVACY UNDER CALIFORNIA LAW
### (Against California-governed Defendants)

89. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

90. This count is pleaded to the extent California law governs any Defendant's conduct.

91. Defendants publicly disclosed private facts concerning Plaintiff, including her private intimate image and related intimate information.

92. The disclosed facts were private, not generally known, not voluntarily exposed by Plaintiff to the public, and not matters of legitimate public concern.

93. The disclosure would be highly offensive to a reasonable person because it exposed or threatened to expose Plaintiff's private intimate image to public TikTok audiences, family members, customers, and community members.

25

94. Defendants' conduct caused Plaintiff emotional distress, humiliation, reputational injury, business harm, and other damages.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER MICHIGAN LAW

### (Against All Defendants Whose Conduct Is Alleged Herein)

95. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

96. Defendants' conduct was extreme and outrageous. No civilized society tolerates broadcasting a private intimate image to a large social-media audience, repeating the display through another account, threatening to send the image to family, sending family photographs as part of the threat, taunting the victim to "pick your poison," pressuring the victim to apologize for "mercy," offering to send the images to a viewer by direct message, and publicly accusing the victim of sexually improper conduct.

97. Defendants intended to cause Plaintiff emotional distress or acted in reckless disregard of the near certainty that severe emotional distress would result. Their statements and conduct show an intent to humiliate, intimidate, coerce, and punish Plaintiff.

98. Defendants' conduct caused Plaintiff severe emotional distress, including humiliation, fear, anxiety, loss of privacy, reputational injury, disruption to family relationships, and business-related harm.

99. Defendants' conduct was not privileged, was not legitimate commentary on a matter of public concern, and was not accidental. It was a targeted campaign

26

using intimate imagery, threats, DMs, Live broadcasts, viewer solicitations, public chat amplification, and multiple accounts used to conceal identity and continue the campaign.

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER CALIFORNIA LAW

### (Against California-governed Defendants)

100. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

101. This count is pleaded in the alternative to the extent California law governs any Defendant's conduct, including Alsaigh's conduct if he acted from California and any Robin, Maloomat Doe, Host Doe, or other Doe conduct governed by California law.

102. Defendants engaged in extreme and outrageous conduct by knowingly or recklessly displaying, distributing, threatening to distribute, offering to distribute, and weaponizing Plaintiff's private intimate image to humiliate, coerce, and harm her.

103. Defendants intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability of causing severe emotional distress. Their conduct was calculated to shame Plaintiff before family, community members, customers, and TikTok viewers.

104. Plaintiff suffered severe or extreme emotional distress, including emotional distress of substantial and enduring quality that no reasonable person in a civilized community should be expected to endure.

105. Defendants' outrageous conduct was the actual and proximate cause of Plaintiff's severe emotional distress and related damages.

## COUNT VII - CIVIL STALKING UNDER MCL 600.2954 AND MCL 750.411h (Against Robin, Maloomat Doe, Alsaigh, Host Doe, and Doe Defendants to the Extent Supported by Discovery)

106. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

107. Defendants engaged in a willful course of conduct composed of two or more separate noncontinuous acts evidencing a continuity of purpose, including TikTok Live publication, repeated public discussion of Plaintiff, direct messages to Plaintiff, threats to send private images to Plaintiff's family, sending Plaintiff family photographs as part of the threat, tagged posts, the July 6 Live display, the unknown-date @ERAZORA222 Live, the July 7 @HALEYMARY22 Live, solicitations or offers to send the images by direct message, public chat amplification, and use of multiple accounts to conceal identity and continue the campaign.

108. The course of conduct involved repeated and continuing harassment and unconsented contact, including electronic communications and direct messages to Plaintiff. Plaintiff did not consent to the contacts, the threats, the public postings, or the continued harassment.

109. Defendants' conduct would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed,

28

or molested. Plaintiff actually suffered emotional distress and felt threatened, harassed, intimidated, and humiliated.

110.    Defendants' conduct served no legitimate purpose and is not constitutionally protected activity. The gravamen of this count is targeted harassment and threats involving private intimate images and unconsented direct communications, not protected opinion.

111.    Plaintiff is a victim within the meaning of MCL 600.2954 and is entitled to damages, exemplary damages, costs, reasonable attorney fees, and all other relief available under Michigan law.

## COUNT VIII - DEFAMATION AND DEFAMATION PER SE UNDER MICHIGAN LAW

**(Against Robin, Alsaigh to the Extent He Published or Republished Defamatory Statements, Maloomat Doe to the Extent Supported by Discovery, and Doe Defendants)**

112.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

113.    During the TikTok Lives and related TikTok publications, including the July 1 @CRASHOUTQUEEN0122 Live, the unknown-date @ERAZORA222 Live, the July 7 @HALEYMARY22 Live, and related posts, Robin, Alsaigh to the extent proven, Maloomat Doe to the extent proven, and/or Doe Defamation Defendants published, republished, adopted, or amplified false statements of fact concerning Plaintiff to third parties, including statements or materially false implications that Plaintiff sent sexually explicit

29

photographs or sexual propositions to multiple men, attempted to "groom" another TikTok user, was associated with publicly circulating nude or "naughty" pictures, and engaged in sexually improper or dishonest conduct.

114. Those statements concerned Plaintiff. Participants identified Plaintiff by name and discussed her private images, purported messages, family, customers, and community relationships in a manner intended to identify Plaintiff to TikTok viewers and the relevant community.

115. The statements were false and defamatory.

116. The statements were published to third parties on TikTok and were not privileged.

117. The publishers acted with at least negligence and, upon information and belief, actual malice. The statements were made as part of a retaliatory campaign after Defendants publicly displayed or discussed Plaintiff's private images, threatened further exposure, and solicited or offered direct-message dissemination to third parties.

118. The statements impute lack of chastity, sexual misconduct, dishonesty, and other conduct tending to harm Plaintiff in her family, community, and professional relationships. Under MCL 600.2911, words imputing lack of chastity are actionable in themselves in the same manner as words imputing criminal conduct.

119. Plaintiff is entitled to general damages, special damages, presumed damages to the extent available, exemplary damages to the extent authorized

30

after compliance with any applicable retraction requirements, injunctive relief as permitted by law, costs, and all other relief available.

## COUNT IX - CIVIL CONSPIRACY AND CONCERT OF ACTION UNDER MICHIGAN LAW

### (Against All Defendants Who Acted in Concert)

120. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

121. Defendants and Doe Defendants acted together, coordinated, encouraged, assisted, and/or materially participated in the unlawful campaign against Plaintiff.

122. The concerted conduct included, without limitation, obtaining or supplying Plaintiff's private image, displaying it on TikTok Live, encouraging or enabling Alsaigh's display, tagging and summoning additional accounts, discussing Plaintiff and her images in subsequent Lives, threatening further disclosure, sending images and threats through direct messages, sending Plaintiff family photographs as part of the threat, repeating the display on the July 6 Live, continuing the campaign through the @ERAZORA222 and @HALEYMARY22 Lives, soliciting or offering to send the images by direct message, making or republishing defamatory statements, and using multiple accounts to conceal identity and continue the campaign.

123. Defendants' agreement or concerted action may be inferred from their coordinated TikTok activity, overlapping accounts, common targets, common timing, shared references to Plaintiff and her images, tagging of one another,

31

direct-message threats, live-chat solicitations, viewer admissions that the images had already been seen, and continued harassment after the June NCII display.

124.   The underlying tortious acts include violations of 15 U.S.C. § 6851, violations of California Civil Code § 1708.85, invasion of privacy, intentional infliction of emotional distress, civil stalking, defamation, and related unlawful conduct.

125.   As a direct and proximate result of Defendants' conspiracy and concerted action, Plaintiff suffered the damages alleged herein. Each Defendant who joined, aided, encouraged, or substantially assisted the tortious conduct is jointly and severally liable to the extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally to the extent permitted by law, and award the following relief:

a.  Actual damages in an amount to be proven at trial, including emotional distress, reputational harm, business harm, economic losses, mitigation costs, and all consequential damages;

b.  Liquidated damages under 15 U.S.C. § 6851 in the amount of $150,000, or such greater amount as the Court determines is recoverable for each actionable disclosure, violation, and/or Defendant, or actual damages if

greater and elected, together with costs, reasonable attorney fees, and other litigation costs recoverable under the statute;

c. General and special damages under California Civil Code § 1708.85 and applicable California law, to the extent California law applies;

d. Damages, exemplary damages, costs, and reasonable attorney fees under MCL 600.2954 for civil stalking;

e. General, special, presumed, exemplary, and other damages available under Michigan defamation law, subject to any applicable retraction, malice, or damages requirements;

f. Prejudgment and post-judgment interest as allowed by law;

g. A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants and all persons acting in concert with them from disclosing, publishing, displaying, reposting, transmitting, sending, threatening to send, inducing another to send, or otherwise making accessible Plaintiff's private intimate images or any copy, screenshot, recording, crop, excerpt, derivative, or substantially similar image;

h. An order requiring Defendants to remove, take down, and request removal of all posts, reposts, clips, stitches, duets, comments, direct messages, saved Lives, screenshots, and other materials containing Plaintiff's private intimate image or identifying information tied to that image;

i. An order requiring Defendants to preserve all evidence, accounts, devices, messages, images, metadata, and communications relating to Plaintiff, the

33

private image, the June and July TikTok Lives, Maloomat Doe's direct messages through the @SHIKHTANAMALOOMAT account, Robin's July 6 Live through the @JONATHANESHAYZAYA alias, Robin's unknown-date Live through the @ERAZORA222 alias, Robin's July 7 Live through the @HALEYMARY22 account, the @moefromthed313 exchange, the @That'swhatSHEsaid comments, and defamatory statements, pending forensic inspection and discovery;

j. An order allowing Plaintiff to proceed pseudonymously and requiring redaction or sealing of Plaintiff's identifying characteristics, intimate images, account identifiers, family information, business identifiers as appropriate, and other sensitive materials;

k. Costs of suit, reasonable attorney fees, and litigation expenses where authorized by statute, court rule, or equitable authority; and

l. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Shawn Desai

Shawn L. Desai (P81845)
*Attorney for Plaintiff*
DESAI LEGAL SERVICES PLLC
6450 Farmington Road, Ste. 105,
West Bloomfield, Michigan 48322
(810) 355-6134
Shawn@DesaiLegalServices.com

34

/s/ Ayila Arshad
Ayila Arshad (717920)
*Attorney for Plaintiff*
DESAI LEGAL SERVICES PLLC
6450 Farmington Road, Ste. 105,
West Bloomfield, Michigan 48322
(810) 355-6134
Ayila@DesaiLegalServices.com